IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARY L. HALL, *on behalf of*                                            PLAINTIFF
K. HALL, *a minor child*

      v.                          CIVIL NO. 5:17-CV-5036

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                                          DEFENDANT

**<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Plaintiff, Mary L. Hall, brings this action on behalf of her minor child, K.H., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying K.H.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.**     **Procedural Background:**

Plaintiff protectively filed the application for SSI on her minor child K.H.'s behalf on March 13, 2014, alleging that K.H., who was twelve years of age when the application was filed, was disabled due to a learning disability, sleep apnea, and restless leg syndrome. (Tr. 91, 102). An administrative hearing was held on October 21, 2015, at which Plaintiff and K.H. appeared with counsel and testified. (Tr. 59-89).

In a written opinion dated November 30, 2015, the ALJ found that K.H. had the following severe impairments: asthma, attention deficit/hyperactivity disorder (ADHD), a

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

learning disorder, and obesity. (Tr. 29-30). However, the ALJ further found that as K.H. did not have an impairment or combination of impairments that was medically or functionally equal to a listed impairment, K.H. was not disabled. (Tr. 43).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 17, 2017. (Tr. 1-6, 14-19). Plaintiff filed a Petition for Judicial Review of the matter on February 21, 2017. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 13, 14).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.     Evidence Submitted:**

At the hearing before the ALJ on October 21, 2015, Plaintiff's mother testified that K.H. was born approximately three weeks premature on January 17, 2002. (Tr. 65-66). She further testified that at the time of the hearing, he was thirteen years old and was in the 8th grade. (Tr. 65-66).

Prior to the relevant time period, the medical records reveal that K.H. was treated for allergic rhinitis, extrinsic asthma, obstructive sleep apnea, ADHD, ear infections, bronchitis, cough symptoms, flu vaccine reaction, head contusion, leg cramps, and dermatitis. (Tr. 344, 350, 356, 374, 380, 397, 398, 409, 416, 422, 428, 433, 441-444, 450, 455, 613-615, 617-618, 623-625, 629, 630-633, 667, 671-673, 675, 677). Also prior to the relevant time period, K.H. was evaluated for problems with his vision, for which Optometric Vision Therapy was recommended to assist with development of the necessary visual abilities for academic achievement. (Tr. 661). Plaintiff also underwent a Psychological Evaluation by Corrinne

2

Anton, at the University of Arkansas Psychology Clinic, where he was diagnosed with ADHD, math disorder, written expression disorder, and learning disorder. (Tr. 246-255). In 2012, a speech and language screening report from K.H.'s school in Pea Ridge, Arkansas, demonstrated that he achieved average scores and that further testing of K.H.'s language and auditory perception ability was not needed. (Tr. 763). Also in 2012, K.H. underwent Wechsler Intelligence Scale for Children, where it was determined that his full scale IQ was 75. (Tr. 238). K.H. also underwent an evaluation in the Pea Ridge School District, which demonstrated his need for special education services in the areas of reading, written expression and math. (Tr. 739). An Individual Education Plan (I.E.P.) conducted in March of 2012 showed that K.H.'s scores and performance were below grade level in the areas of reading, writing and math. (Tr. 727). K.H.'s 2013 I.E.P revealed that he had not met his learning goals for the year. (Tr. 711). However, K.H.'s 2014 I.E.P revealed that while K.H. had completed some of his annual goals and continued to make progress, it was anticipated that he would continue to receive special education services. (Tr. 690).

During the relevant time period, in April of 2014, K.H. completed Benchmark testing where he scored at the basic level for math and below the basic level in literacy. (Tr. 663). K.H.'s literacy and written expression teacher, Ms. Ballard, completed a Teacher Questionnaire. In that statement, Ms. Ballard indicated that K.H. had slight problems with response to most tasks involving acquiring and using information, attending and completing tasks, and interacting and relating to others; a slight problem with moving about and manipulating objects; and a few obvious problems with respect to tasks involving caring for himself. (Tr. 283-289). Ms. Ballard also indicated that K.H. had not had excessive absences from school. (Tr. 289).

3

On April 9, 2014, K.H. was seen by Pam Chrisco, APRN, for cold symptoms and was treated with prescription medication. (Tr. 611-612). On April 17, 2014, Dr. Curtis Hedberg, at Hedberg Allergy and Asthma Center, documented the following in his clinic notes: that K.H.'s allergic rhinitis was controlled with medication; that his recent asthma flare-up was treated with medication; and that his sleep apnea was well controlled with nightly use of a CPAP machine. (Tr. 576). Pulmonary testing from that date showed mild obstructive pulmonary impairment. (Tr. 587).

On April 29, 2014, K.H. was seen by Dr. Wade Fox at Northwest Arkansas Primary Care Physicians for a sports physical and a refill of his Adderall. (Tr. 609-610). Plaintiff visited Northwest Arkansas Primary Care Physicians again on June 6, 2014, and after a chest x-ray was performed, he was prescribed antibiotics for bronchitis. (Tr. 607-608).

On July 31, 2014, K.H. underwent a Mental Diagnostic Evaluation and Intellectual Assessment by Dr. Deborah A. Smithyman, PsyD. Dr. Smithyman made the following determinations: that K.H. had not undergone any mental health therapy or counseling; that his speech was clear; that his thoughts were logical; that he was calm and cooperative; that his ADHD was well controlled on medication; and that he had an IQ score of 80. (Tr. 588-591). Dr. Smithyman also opined that K.H. was behind academically because of his cognitive limitations; however, he communicated and interacted in a socially adequate manner; he communicated in an intelligible and effective manner; he was able to cope with the demands of the testing; he would likely to be able to accomplish usual tasks in school setting in an acceptable time frame with receipt of special education services; he could attend and concentrate adequately; and his task persistence was good. (Tr. 591-592).

On August 6, 2014, Dr. Patricia McCarron, a non-examining medical consultant, completed a Child Disability Evaluation in which she determined that K.H. had no limits in any area except for a less then marked limitation in acquiring and using information. (Tr. 97). She further determined that K.H.'s impairment or combination of impairments was severe; however, they did not "meet, medically equal, or functionally equal the listings." (Tr. 97-98).

On August 9, 2014, K.H. saw family practitioner, Dr. Zach Guynn, for symptoms of swimmers ear, for which he was prescribed ear drops. (Tr. 605). Plaintiff was seen by Dr. Fox on August 11, 2014, for a refill on his ADHD medications. (Tr. 603). On August 31, 2014, Plaintiff was seen at Northwest Arkansas Primary Care Physicians by Ambry Prater, PA, for sinus drainage, sore throat and cough. Plaintiff was assessed with seasonal allergic rhinitis and an upper respiratory infection and treated with allergy medications as well as other over-the-counter medications. (Tr. 601-602). K.H. was seen at Arkansas Medical and Wellness on September 7, 2014, for continued cough and congestion, for which he was prescribed antibiotics and prednisone. (Tr. 599-600). On October 9, 2014, K.H. was seen at Arkansas Medical and Wellness for a blood blister on the bottom of his right foot, which he was told would reabsorb on its own. (Tr. 597).

On November 6, 2014, K.H.'s math teacher and his school nurse completed a Teacher Questionnaire, where they opined that K.H. had serious problems with most tasks in the domain of acquiring and using information; only slight problems in attending and completing tasks and caring for himself; a few slight problems with respect to interacting and relating with others; and no problems with respect to moving about and manipulating objects. (Tr. 274-280). The nurse opined that K.H. did not have any health issues while at school; that he had not had any episodes of asthma; and that he was always on time to get his medication at school.

5

She further noted that he was very polite and respectful and that he interacted well with other students while in her office. (Tr. 281).

On November 12, 2014, Ms. Ballard completed a second Teacher Questionnaire wherein she stated that K.H. had both slight and obvious trouble functioning in the domain of acquiring and using information; some trouble functioning in the area of attending and completing tasks; slight problems in the area of interacting and relating to others; no problems in the area of moving about and manipulating objects; and an obvious problem with caring for himself. (Tr. 226-233). She further stated that K.H. did not miss school frequently due to illness. (Tr. 234).

On November 13, 2014, Dr. Janece Hiegel, a non-examining medical consultant, completed a Child Disability Evaluation where she found that K.H. had less than marked impairment in health and physical well-being, interacting and relating with others, and acquiring and using information. (Tr. 110-111). Dr. Hiegel determined that K.H. had no limitations in attending and completing tasks, moving about and manipulating of objects, and caring for self. (Tr. 110-111). Dr. Hiegel ultimately affirmed Dr. McCarron's opinion. (Tr. 111).

On October 8, 2015, Mr. Andrew Ballard, K.H.'s special education teacher, completed a Teacher Questionnaire where he opined that K.H. had problems in the area of acquiring and using information and noted that K.H. needed extensive help after class to apply concepts on independent work. (Tr. 308). He also opined that K.H. had trouble attending and completing tasks; that he had trouble interacting and relating to others; that he had only a slight problem in moving about and manipulating objects; and that he had slight and obvious problems in

6

caring for himself. (Tr. 307-312). Mr. Ballard also stated that K.H. did not have any excessive absenteeism from school. (Tr. 307).

An additional Teacher Questionnaire was completed on October 9, 2015, by Mr. Quentin Snoderly, one of K.H.'s mathematics teachers. In that questionnaire, Mr. Snoderly opined that K.H. had slight problems in the domain of acquiring and using information, but no problems in any other area. (Tr. 327-333). Mr. Snoderly also noted that K.H. did not have any excessive absenteeism from school, and as a result of his modifications and his health care plan, K.H. functioned very well in the school environment. (Tr. 327, 333).

On October 10, 2015, Dr. Hedberg completed a Medical and Functional Capacity Assessment (child), where he opined that K.H. had moderate limitations in acquiring and using information, attending and completing tasks, and caring for himself. He further opined that K.H. had marked limitations in interacting and relating with others and in the area of health and physical well-being. Lastly, he opined that K.H. had extreme impairment in the area of moving about and manipulating objects. (Tr. 787-788).

An additional Medical and Functional Capacity Assessment (child) was completed by Dr. Guynn on October 15, 2015. Dr. Guynn opined that K.H. had moderate impairment in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for self. (Tr. 782-784). Further, he opined that K.H. had marked impairment in health and physical well-being. (Tr. 782-784). Dr. Guynn also noted some health concerns related to K.H.'s obesity. (Tr. 784).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d). In the present case, the ALJ found that K.H.'s claim failed at step three, as K.H. did not have an impairment that met, or medically or functionally equaled, a listed impairment. (Tr. 30).

**IV.    Discussion**:

First, the Court finds there is substantial evidence on the record to support the ALJ's determination that K.H's impairment did not meet or medically equal in severity any listed impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B.  The Court next addresses whether K.H.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [K.H.] cannot do because of [his] impairments … is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a(a).

Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations in one of the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. See 20 C.F.R. §§ 416.926(b)(1), 416.926a(d).  The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers. SSR 09-2P.  In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information." Lawson v. Astrue, 2009 WL 2143754, at 9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. § 416.924a.

The ALJ determined that the facts in this case suggested that K.H. has less than marked limitation in areas of acquiring and using information, interacting and relating with others, and health and physical well-being; and no limitation in the areas of attending and completing tasks, moving about and manipulating objects, and caring for himself.  (Tr. 38-44).

The Court will address each of the ALJ's domain determinations.

9

### 1. Acquiring and Using Information:

In the domain of "acquiring and using information," the ALJ considers, inter alia, how well a child acquires, learns, and uses information. 20 C.F.R. § 416.926a(g). An adolescent, like K.H., should continue to demonstrate what he has learned in academic assignments, and should also be able to use what he has learned in daily living situations without assistance. An adolescent should be able to comprehend and express both simple and complex ideas, using increasingly complex language in learning and daily living situations. The adolescent should also learn to apply these skills in practical ways that will help him enter the workplace after finishing school. 20 C.F.R. § 416.926a(g)(2)(iv).

With regard as to acquiring and using information, the ALJ determined K.H. had less than marked limitation in this area. In making that determination, the ALJ noted that K.H.'s recent intellectual testing had produced a full scale IQ that was indicative of functioning in the low average range. Moreover, K.H. testified that his grades consisted of A's and B's. (Tr. 84). His mother testified that K.H. was in the 8th grade, and that he had not failed a grade or been retained. (Tr. 65). The medical record as a whole demonstrated that K.H.'s ADHD was well-controlled with medication. While a few of K.H.'s teachers reported that K.H. had one or more serious problems in the area of acquiring and using information, the ALJ found those opinions to be less persuasive.

The ALJ gave great weight to the July 31, 2014, evaluation by Dr. Deborah A. Smithyman, PsyD, where Dr. Smithyman determined that K.H.'s speech was clear, his thoughts were logical, and he was calm and cooperative during the evaluation. (Tr. 589). She further determined that while he had some difficulty with block design, had trouble remembering the digits for working memory subtests, and would often guess the wrong

10

numbers and letters that were used, he had an IQ score of 80, his ADHD was well-controlled with medication, and while he was behind academically because of his cognitive limitations, he communicated and interacted in a socially adequate manner, was very polite, communicated in an intelligible and effective manner, and was able to cope with the demands of testing. (Tr. 589-591). She further determined that despite K.H. needing special education for some subjects at school, he was likely to be able to accomplish usual tasks in a school setting, could attend and concentrate adequately, had good task persistence, and could likely complete school-like tasks in an acceptable time frame given his special education classes. (Tr. 591-592). Moreover, the ALJ gave some weight to non-examining medical consultant, Dr. Patricia McCarron's assessment where she found that K.H. had less then marked limitation in acquiring and using information and no limitation in any other domain, and great weight to the assessment by Dr. Janece Hiegel on reconsideration that found that K.H. had only some degree of limitation in the six domains. (Tr. 97, 110-111).

**2. Attending and Completing Tasks:**

In the domain of attending and completing tasks, consideration is given to how well a child is able to focus and maintain his attention, and how well the child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which a child changes them. 20 C.F.R. § 416.926a(h). In an adolescent's later years of school, he should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. The adolescent should also be able to organize materials and to plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, an adolescent should be able to maintain attention on a task for extended periods

11

of time, and not be unduly distracted by peers or unduly distracting to them in a school or work setting. 20 C.F.R. § 416.926a(h)(2)(v).

The ALJ found that K.H. had no limitation in this domain. The ALJ noted that K.H.'s ADHD was well-controlled on medication, and that several of his teachers noted that he had only slight problems in this area. K.H. testified that he generally earned A's and B's in school, which was supportive of the fact that he is able to attend and complete tasks. (Tr. 84). Further, Dr. Smithyman found that K.H. was likely to be able to accomplish usual tasks in a school setting and complete those tasks in an acceptable time frame, especially with his receipt of special services. (Tr. 591-592). Dr. Smithyman also concluded that K.H. could attend and concentrate adequately and that his task persistence was good. (Tr. 591).

### 3. Interacting and Relating to Others:

With regard to the domain of interacting and relating with others, consideration is given to how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. Id. § 416.926a(i). An adolescent should be able to initiate and develop friendships with children who are his age and to relate appropriately to other children and adults, both individually and in groups. The adolescent should begin to be able to solve conflicts between himself and peers or family members or adults outside his family, and should recognize that there are different social rules for him and his friends and for acquaintances or adults. The adolescent should be able to intelligibly express his feelings, ask for assistance in getting his needs met, seek information, describe events, and tell stories, in all kinds of environments, and with all types of people. 20 C.F.R. § 416.926a(i)(2)(v).

The ALJ determined K.H. had less than marked limitation in this area. In making that determination, the ALJ noted while K.H.'s mother testified that he did not have close friends like other children his age, K.H. testified that he liked school and that he had many friends there. (Tr. 69, 74, 82-84). K.H. also testified that he liked to play basketball and that he was the manager of the basketball team. (Tr. 84). Despite Dr. Hedberg's opinion that K.H. had marked impairment in this area, and Dr. Guynn's opinion that K.H. had moderate impairment in this area, several of K.H.'s teachers indicated only some problems in this area. (Tr. 287, 231, 310, 783, 787-788). Further, Mr. Snoderly's responses indicated that K.H. did not have any problems in this area. (Tr. 330). As previously discussed, Dr. Smithyman's evaluation revealed that K.H. was calm, cooperative, polite, and communicated and interacted in a socially adequate manner. (Tr. 589-591).

### 4. Moving About and Manipulating Objects:

In the domain of moving about and manipulating objects, consideration is given to how a child moves his body from one place to another and how he moves and manipulates things. 20 C.F.R. § 416.926a(j). An adolescent should be able to use his motor skills freely and easily to get about his school, the neighborhood, and the community. The adolescent should be able to participate in a full range of individual and group physical fitness activities. He should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard. 20 C.F.R. § 416.926a(j)(2)(v).

The ALJ determined K.H. had no limitation in this area. The ALJ reasoned that despite K.H.'s mother's testimony that he had difficulty manipulating the buttons on his pants, she also testified that K.H. had mastered riding a bicycle. (Tr. 69-71). Further, K.H. testified that he enjoyed playing video games after school and had been chosen as the manager for the

basketball team. (Tr. 83-86). The ALJ acknowledged Dr. Hedberg's Assessment where he stated K.H. had extreme limitation in this area, as well as Dr. Guynn's Assessment where he found that K.H. had moderate limitation in this area; however, the ALJ found both to be entitled to little weight as they were contradictory to the record as a whole. (Tr. 783, 787-788). In addition, K.H.'s teachers indicated he had no more than slight problems in this area. (Tr. 232, 279, 311, 331).

### 5. Caring for Self:

In the domain of caring for himself, consideration will be given to how well the child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways; how he copes with stress and changes in his environment; and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). An adolescent should feel more independent from others and should be increasingly independent in all of his day-to-day activities. He may experience confusion in the way he feels about himself. He should begin to notice significant changes in his body's development, and this can result in anxiety or worrying about himself and his body. The adolescent should begin to discover appropriate ways to express his feelings, both good and bad. An adolescent should begin to think seriously about his future plans, and what he will do after finishing school. 20 C.F.R. § 416.926a(k)(2)(v).

The ALJ determined that K.H. had no limitation in this domain. The ALJ noted that nothing in the record indicated that K.H. had difficulty in feeding himself or attending to his basic hygiene. While the ALJ acknowledged K.H.'s mother's testimony about some difficulty tying his shoes and buttoning his pants, the record demonstrated that K.H. could pull on his elastic waist pants and dress himself. A few of K.H.'s teachers, as well as Dr. Hedberg and

14

Dr. Guynn, indicated he had more than slight problems in this area; however, the ALJ did not afford those opinions great weight as they were inconsistent with the record as a whole. In addition, K.H. testified that he liked to read and that he wanted to be an NBA player or an attorney after he completed school. (Tr. 84).

### 6. Health and Physical Well-Being:

In the domain of health and physical well-being, consideration is given to the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's functioning that was not considered in the section on moving about and manipulating objects. 20 C.F.R. § 416.926a(l). Here, the ALJ found that K.H. had less than marked limitation in this domain. The ALJ acknowledged K.H.'s asthma and his treatment during flare-ups. The ALJ also noted that medical records indicated that K.H. had only mild obstructive pulmonary impairment with imaging that had shown no acute abnormalities. (Tr. 444, 587, 632). K.H.'s teachers all consistently reported that K.H. did not have excessive absences from school for his health problems. (Tr. 226, 274, 283, 307, 327). Medical records indicated that K.H.'s ADHD, as well as his sleep apnea, were well-controlled with medication and the use of CPAP equipment. Further, K.H. was selected as the team manager for the basketball team.

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that K.H. did not have an impairment or combination of impairments that was medically or functionally equal to a listed impairment, and thus, he was not disabled.

### V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of**

15

**our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of November, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE